UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ONE-BLUE, LLC, KONINKLIJKE PHILIPS N.V., PANASONIC CORPORATION, PIONEER CORPORATION, and SONY CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>IMATION CORPORATION,<br><br>Defendant. | C.A. No. 1:13-cv-00917 (LPS)<br><br>**JURY TRIAL DEMANDED** |

## <u>DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS</u>

Defendant Imation Corp. ("<u>Imation</u>") hereby responds to Plaintiffs' Complaint as follows:

1.  Imation admits the allegations of paragraph 1.

2.  Imation admits the allegations of paragraph 2.

3.  Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 3.

4.  Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 4.

5.  Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 5.

6.  Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 6.

7.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 7.

8.      Imation admits the allegations of paragraph 8.

### Factual Background

9.      Imation admits the allegations of paragraph 9.

10.      Imation admits the allegations of paragraph 10.

11.      Imation admits the allegations of paragraph 11.

12.      Imation lacks knowledge sufficient to form a belief as to the truth of whether Plaintiffs' patents reflect "pioneering inventions" but otherwise admits the allegations of paragraph 12.

13.      Imation admits the allegations of paragraph 13.

14.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 14.

15.      Imation admits the allegations of paragraph 15.

16.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 16.

17.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 17.

18.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 18.

19.      Imation admits the allegations of paragraph 19.

20.      Imation admits the allegations of paragraph 20.

21.      Imation admits the allegations of paragraph 21.

22.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegation that the products are "infringing" but otherwise denies the allegations of paragraph 22.

23.      Imation denies the allegations of paragraph 23.

**Personal Jurisdiction and Venue**

24.      Imation admits the allegations of paragraph 24.

25.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 25.

26.      Imation alleges that the allegations of paragraph 26 are conclusions of law to which no response is required.

27.      Imation alleges that the allegations of paragraph 27 are conclusions of law to which no response is required.

28.      Imation alleges that the allegations of paragraph 28 are conclusions of law to which no response is required.

29.      Imation alleges that the allegations of paragraph 29 are conclusions of law to which no response is required.

30.      Imation alleges that the allegations of paragraph 30 are conclusions of law to which no response is required.

**First Count**
**(Patent Infringement)**

31.      Imation admits the allegations of paragraph 31.

32.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 32.

33.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 33.

34.     Imation admits that it received the letter referenced in paragraph 34 but alleges that its contents speak for themselves.

35.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 35.

## Second Count
## (Patent Infringement)

36.     Imation admits the allegations of paragraph 36.

37.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 37.

38.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 38.

39.     Imation denies the allegations of paragraph 39.

40.     Imation denies the allegations of paragraph 40.

41.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 41.

42.     Imation admits that it received the letter referenced in paragraph 42 but alleges that its contents speak for themselves.

43.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 43.

44.     Imation denies the allegations of paragraph 44.

**Third Count**
**(Patent Infringement)**

45.     Imation admits the allegations of paragraph 45.

46.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 46.

47.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 47.

48.     Imation denies the allegations of paragraph 48.

49.     Imation denies the allegations of paragraph 49.

50.      Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 50.

51.     Imation admits that it received the letter referenced in paragraph 51 but alleges that its contents speak for themselves.

52.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 52.

53.     Imation denies the allegations of paragraph 53.

**Fourth Count**
**(Patent Infringement)**

54.     Imation admits the allegations of paragraph 54.

55.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 55.

56.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 56.

57.     Imation denies the allegations of paragraph 57.

58.     Imation denies the allegations of paragraph 58.

59.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 59.

60.     Imation admits that it received the letter referenced in paragraph 60 but alleges that its contents speak for themselves.

61.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 61.

62.     Imation denies the allegations of paragraph 62.

### Fifth Count
### (Patent Infringement)

63.     Imation admits the allegations of paragraph 63.

64.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 64.

65.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 65.

66.     Imation denies the allegations of paragraph 66.

67.     Imation denies the allegations of paragraph 67.

68.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 68.

69.     Imation admits that it received the letter referenced in paragraph 69 but alleges that its contents speak for themselves.

70.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 70.

71.     Imation denies the allegations of paragraph 71.

## Sixth Count
## (Patent Infringement)

72.     Imation admits the allegations of paragraph 72.

73.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 73.

74.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 74.

75.     Imation denies the allegations of paragraph 75.

76.     Imation denies the allegations of paragraph 76.

77.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 77.

78.     Imation admits that it received the letter referenced in paragraph 78 but alleges that its contents speak for themselves.

79.     Imation lacks knowledge sufficient to form a belief as to the truth of the allegations of paragraph 79.

80.     Imation denies the allegations of paragraph 80.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Some or all of the claims asserted in the Complaint fail to state a claim on which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims against Imation are barred by the doctrines of waiver, estoppel, and laches.

### Third Affirmative Defense

Any claim for damages prior to the date of actual notice is barred by plaintiffs' failure to allege or demonstrate that its products and licensed products were properly marked.

### Fourth Affirmative Defense

Some or all of the claims of U.S. Patent Nos. 7,290,272, 7,389,520, 7,292,509, 7,123,567, 7,349,309, and 7,158,472 ("the patents-in-suit") are invalid under one or more provisions of Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Fifth Affirmative Defense

Plaintiffs are estopped from construing any claim of the patents-in-suit to cover any Imation product or any method of using an Imation product by reason of admissions, amendments, and arguments presented by Plaintiffs to the U.S. Patent Office during the prosecution of the applications that led to the patents-in-suit.

### Sixth Affirmative Defense

To the extent that the patents-in-suit incorporate or relate to standards governing the structure, format, or other attributes of any accused products, Plaintiffs are barred, in whole or in part, from any recovery or relief by their refusal to license the patents-in-suit under fair, reasonable, and nondiscriminatory terms.

For its Counterclaims against all Plaintiffs, Imation states and alleges as follows:

### COUNTERCLAIMS AGAINST ALL PLAINTIFFS

### Nature Of The Case

1.      Defendant and Counter-Plaintiff Imation Corp. ("Imation") brings this Counterclaim for the breach by all Plaintiffs and Counter-Defendants ("Plaintiffs") of their commitments to offer licenses for patents that Plaintiffs assert to be essential or related to

essential patents under fair, reasonable and non-discriminatory ("FRAND") terms and conditions.

2.      Imation and Plaintiffs, directly or through principals, are all members of the Blu-Ray Disc Association ("BDA"), an organization of entities with interests in Blu-ray disc formats.

3.      As members of BDA, Imation and Plaintiffs are subject to BDA's Bylaws, which through Clause 16 provide in pertinent part that all members will offer to any interested party licenses to patents essential to Blu-ray disc technology on FRAND terms and conditions. Plaintiffs further committed, through their membership in BDA and other means, that "the aggregate of terms and conditions and conditions of all licenses necessary under the Members' Essential Patents shall not block, frustrate or harm acceptance of any Blu-ray Disc Format as a worldwide standard or development of products complying with any Blu-ray Disc Format or commercialization" of such products.

4.      BDA and its participants and affiliates, including Imation, relied on Plaintiffs' promises in developing, adopting and implementing Blu-ray disc standards.  Imation has invested substantial resources in developing and marketing products in compliance with these standards, relying on the assurances of participating patent holders – including Plaintiffs – that any "essential" patents held by such patent holders would be available for licensing by implementers of the standards on FRAND terms.

5.      Plaintiffs have broken their promise to BDA and its members and affiliates, including Imation and its affiliates, by refusing to offer to Imation a license on FRAND terms, instead demanding royalties that are excessive and discriminatory, and further by refusing to negotiate as to such terms or provide any information supporting the royalties they have demanded.

6.       Accordingly, Imation seeks:  (a) a declaration that Plaintiffs' promises to BDA and their respective members and affiliates constitute contractual obligations that are binding on Plaintiffs and enforceable by Imation; (b) a declaration that Plaintiffs have breached these obligations by demanding excessive and discriminatory royalties from Imation and refusing to negotiate or provide information supporting its demands before instituting this action, thus barring them from pursuing their claims in this action; (c) alternatively, a declaration of  what constitutes a FRAND royalty rate consistent with Plaintiffs' promises for Blu-ray patents identified as essential by Plaintiffs; (d) an injunction barring further demands to Imation relating to standards-essential Blu-ray patents; and (e) a judicial determination of and compensation to Imation for Plaintiffs' breach of their FRAND obligations.

## PARTIES, JURISDICTION, AND VENUE

7.       Imation is a Delaware corporation with its principal place of business at One Imation Way, Oakdale, Minnesota 55128.  Imation has a long history of technical innovation in the software and hardware products it develops and distributes.  Imation also relies upon third-party suppliers for the Blu-ray discs it currently sells.

8.       Plaintiff One-Blue, LLC alleges that it is a Delaware limited liability company with its principal place of business in New York.

9.       Plaintiff and Counter-Defendant Koninklijke Philips N.V alleges that it is a Netherlands corporation with its principal place of business in The Netherlands.

10.      Plaintiff and Counter-Defendant Panasonic Corporation alleges that it is a Japanese corporation with its principal place of business in Japan.

11.      Plaintiff and Counter-Defendant Pioneer Corporation alleges that it is a Japanese corporation with its principal place of business in Japan.

12.     Plaintiff and Counter-Defendant Sony Corporation alleges that it is a Japanese corporation with its principal place of business in Japan.

13.     This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1331, 1338(a), 2201, and 2202.

14.     Plaintiffs having brought this action in this district, venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## BACKGROUND

**A.     Blu-ray Disc Technology and the Blu-ray Disc Association**

15.     Blu-ray disc optical storage relies on blue laser diodes to read data on discs that are the same size, shape, and form as CDs and DVDs.  The Blu-ray disc format offers an immense storage capacity, up to 100 gigabytes or more, that provides superior performance for high definition video recording and distribution, among other applications.

16.     A group of electronics companies calling themselves the Blu-ray Disc Founders ("BDF") formed a group in the early 2000s to develop and promote Blu-ray disc technology as an improvement over prior technologies and as an alternative to another high-capacity storage medium, HD DVD, that had been created around the same time.

17.     In the mid-2000s the BDF incorporated itself as BDA Administration Corp., a California nonprofit mutual benefit corporation, subsequently changing its name to BDA, becoming a voluntary membership group open to any entity interested in promoting and developing Blu-ray disc technology.  Imation and the four foreign Plaintiffs, directly or through principals, are all members of BDA.

18.     Plaintiff One-Blue is an agent of the four foreign Plaintiffs with respect to Blu-ray patents deemed essential.

19.     A true and correct copy of the BDA Bylaws is attached hereto as **Exhibit A**.

20.     In approximately 2008 the Blu-ray disc became the industry standard for high-density optical discs when all major movie studios began to support Blu-ray disc over the HD DVD format and all or nearly all electronics companies that had been manufacturing HD DVD devices ceased to do so and focused instead on Blu-ray discs and related devices.

**B.     Imation's Business and Its Sale of Blu-ray Disc Products**

21.     Imation was founded in Minnesota in 1996 when 3M Company spun off its data storage business.

22.     Imation and its predecessor 3M divisions have been involved in the development of numerous technological improvements in data storage and security, such as the introduction of the first magnetic tape in 1947, the first quarter-inch tape cartridge for data storage in 1971, the 3.5-inch floppy disk in 1984, and, more recently, solutions for securing data across mobile workspaces.  Today, Imation is a global data storage and security company with a market presence in more than 100 countries.

23.     Imation has sold optical storage media since the inception of such products and, under its combined Imation, Memorex, and TDK Life on Record brands.  It is a global market share leader in sales of recordable CDs and DVDs.

24.     Imation has been selling Blu-ray disc storage media, purchased from manufacturers unrelated to Imation, since 2007.

25.     Imation joined BDA in 2005 and continues to be a BDA Member, as that term is defined under BDA Bylaws.

26.     Among the Blu-ray disc storage media sold by Imation are recordable and rewritable Blu-ray discs.  Each of the Imation Blu-ray disc products is in a "Blu-ray Disc Format" as defined and governed by BDA Bylaws.

**C.      Plaintiffs' Obligation Under BDA Bylaws**

27.      As members of BDA, Plaintiffs are obligated to comply with the BDA Bylaws.

28.      Clause 16 of the BDA Bylaws governs the actions of BDA members, including Plaintiffs, relating to the license of patent rights.

29.      Pursuant to Clause 16 of the BDA Bylaws, Plaintiffs committed to grant, or cause their affiliated companies to grant, to any interested party, non-exclusive, non-transferable, world-wide licenses on FRAND Terms under all patents essential to any Blu-ray Disc Format ("Essential Patents"), to the extent that they have authority to license such patents.

30.      Plaintiffs also agreed, in Clause 16 of the BDA Bylaws, that the aggregate terms and conditions of all licenses of Essential Patents that any BDA members have the authority to license, shall not block, frustrate, or harm acceptance of any Blu-ray Disc Format as a worldwide standard; nor block, frustrate, or harm development of products in any Blu-ray Disc Format; nor block, frustrate, or harm the commercialization of products in any Blu-ray Disc Format (the "Aggregate of Terms Provision").

**D.      Plaintiffs' Violation of Their Obligations Under the BDA Bylaws**

31.      Plaintiffs' unlawful licensing demands relate to patents that they allege to be essential to Blu-ray disc or related to such patents.

32.      The use of Blu-ray disc technology has grown steadily in the United States since its introduction.

33.      Imation and other companies participating in the development and distribution of Blu-ray discs have relied on Plaintiffs' commitments to ensure that the royalties Plaintiffs would seek would conform to the promises made by Plaintiffs.

34.     Imation and manufacturers of Blu-ray discs necessarily relied on the assurances of participating patent holders including Plaintiffs that any "essential" patents held by such patent holders would be available for licensing by implementers of the standards on such terms.

35.     In disregard of the commitments they made to BDA, Plaintiffs have refused to extend to Imation a license under FRAND terms and conditions consistent with Plaintiffs' promises for any of Plaintiffs' "essential" patents, to negotiate with respect to such licenses, or even to provide information that might explain or justify their demands.

36.     Instead, Plaintiffs are demanding royalty payments that are wholly disproportionate to the royalty rate that their patents should command under any reasonable calculus.

37.     Specifically, on or around June 25, 2012, Plaintiff One-Blue wrote to Imation on behalf of Plaintiffs and other patentees demanding that Imation take a license to distribute specific Imation, Memorex, and TDK Blu-ray discs.  One-Blue referred Imation to the One-Blue website, which includes listed royalty rates.  One-Blue threatened the possibility of "enhanced damages for willful patent infringement and liability for One-Blue's attorneys' fees."  One-Blue demanded that Imation "immediately cease and desist from … selling or trading in unlicensed products," despite the fact that as BDA members, Plaintiffs have agreed that a reasonable royalty is adequate compensation.

38.     In response, Imation explained to One-Blue in a September 4, 2012 letter why One-Blue's demanded rates would make the Blu-ray disc business economically infeasible, proposed what Imation believed to be a more reasonable rate (though subsequent events indicate that even that rate is higher than a FRAND rate), and requested a discussion over what a FRAND rate might actually be:

The license rates that you proposed to Imation, 10.75 cents per BD-R disc and 13.5 cents per BD-RE disc, do not seem workable to us.  Even though you indicated that you lack authority to deviate from those rates, I hope that we can persuade One Blue that those rates should be lowered.  These are some of the reasons why those rates do not seem fair or reasonable to us:

Such rates are greatly disproportionate to rates that Imation pays for royalties on CD and DVD discs.  We do not see why the rate structure should be significantly different from One Blue's inventions.  The proposed rate is a multiple of any comparable royalty rate Imation pays.

Such rates make sale of Blu-ray discs a non-economical business for Imation.  The rates represent a huge proportion of Imation's selling price for the products and make staying in the BD-R and BD-RE disc markets impractical.  The proposed rates are rates that would force Imation out of the market.

We understand that One Blue has never persuaded any seller to pay such net rates; Imation would be the first such licensee.  You indicated that One Blue has entered into a number of licensing transactions that contain nominal royalty rates comparable to those offered to Imation but also include grant-back terms that effectively lower the rate paid.  In order to assess any discrimination against non-One Blue members, key information would seem to be the *net* royalty rates paid by prior licensees.  The goal of a level playing field cannot be achieved if Imation is paying higher royalty rates than other participants in Blu-ray markets.

In considering whether One Blue's royalty rates are fair and reasonable, any licensee must also consider potential royalties demanded by other holders of essential patents.  You indicated that you thought that One Blue held a little over two-thirds of such patents.  If so, then any assessment of the fairness and reasonableness of a royalty paid to One Blue must take account of the fact that approximately one-third of the overall cost must be allocated to other patentees.  We need to take account of the risk that other patentees will demand similar royalties.

We have not seen any economic or accounting justification for the specific rates that One Blue is proposing.

Imation expects to pay, and is willing to pay, a fair and reasonable royalty rate for technology essential to Blu-ray discs and related equipment.  Our disagreement is merely over the level

of royalty.  We propose that the rate be three-and-a-half percent (3.5%) of bare disc costs (that is, Imation's COGS figure, and excluding packaging costs).  The logic for that rate is that it is comparable to royalty rates Imation pays for CD and DVDs, taking into account that One Blue does not hold all essential patents, and thus Imation might also be compelled to pay royalties to other patent holders.  If such rates are not acceptable to One Blue, we invite you to propose a process for resolving the issue.  Imation would be glad to enter into a process that resolves all patent issues worldwide for patent-holder members of One Blue.

In considering those issues, this is the kind of information that seems relevant to us in assessing what licensing terms might be fair, reasonable, and non-discriminatory:

The form license agreements One Blue has entered into with other licensees.

The actual net royalty rates, including grant-back terms resulting in lower net rates, entered into and paid by other licensees.

Any financial analysis supporting the basis and reasonableness of the specific royalty rates chosen by One Blue.  How, in simple terms, were those rates determined?

We ask that One-Blue provide such information.

Again, I appreciate the opportunity to discuss these issues with you.  I hope that you and others at One Blue are able to retain some flexibility in discussing what rates might truly be fair and reasonable.  If we cannot reach agreement without outside help, we would appreciate your thoughts as to an efficient process involving a third party that could help the parties determine a fair rate.

39.     On September 11, 2012, One-Blue rejected Imation's offer of a royalty rate (even though subsequent events indicate that the offered rate would have exceeded any FRAND rate).  One-Blue rejected all Imation's requests for any negotiation or discussion of what a FRAND rate might be.  It rejected Imation's reasonable requests for information.  It stated, "Since One-Blue's royalty rates are non-negotiable, we respectfully decline Imation's offer to enter into a process to resolve Imation's disagreement as to royalty rate."  It stated that, "if Imation persists in its position that it wants to negotiate the royalty rates, frankly, there is not much to discuss."

40.     By September 26, 2012 letter, Imation provided another communication between the parties before Plaintiffs commenced this action.  Imation enclosed a demand letter recently received from yet another claimant to royalties on Blu-ray discs, to help illustrate how, in aggregate, One-Blue's demands were not fair or reasonable.  Imation stated, among other things:

> We encourage One-Blue to decide if it is willing to discuss the basis for fair rates, or any process for resolving the parties' differing views as to such rates.  I hope that you will let us know if One-Blue decides that it is willing to do so.

41.     Neither One-Blue nor the other Plaintiffs ever responded to that request.

42.     Attached as **Exhibit B** to this Answer and Counterclaim are true and correct copies of the June 25, 2012; and September 4, 11, and 26, 2012 correspondence between One-Blue and Imation, or Imation's outside counsel.

43.     In April 2013 a Japanese representative of One-Blue wrote to Imation in Japan, demanding that Imation take a license under the One-Blue program.  Imation responded to that letter, declining the unreasonable demand but indicating Imation's continued willingness to negotiate reasonable terms.  One-Blue did not reply.  This lawsuit followed.

44.     One-Blue never deviated from its insistence on a license rate of 10.75 cents per disc for readable Blu-ray discs and 13.5 cents per disc for recordable Blu-ray discs, and refused Imation's requests to negotiate those rates.  One-Blue would not consider any lower rate for licenses to patents, including the Plaintiffs' Patents, notwithstanding the fact that its rates were so high that such rates would force Imation out of the Blu-ray disc market.

45.     One-Blue insisted on those rates notwithstanding the fact that, by its own admission, it did not have authority to license approximately one-third (or perhaps more) of patents essential to Blu-ray disc technology, so that Imation would likely have to pay further

royalties to other parties and is facing demands from yet one additional party who has brought suit against Imation to claim additional royalties on Imation's sales of Blu-ray discs.

46.     One-Blue refused Imation's request for information that would shed light on how One-Blue arrived at its non-negotiable license rate for the pool of patents including the Plaintiffs' Patents, such as any financial analysis of how the rate was arrived at and whether others in the market were paying similar rates to those offered to Imation.

47.     For the purposes of its offer to license the Plaintiffs' Patents to Imation, and in all of its interactions with Imation, One-Blue acted as an agent of all Plaintiffs.

48.     The actions of Plaintiffs' agent One-Blue are attributable to Plaintiffs, and constitute violations of Plaintiffs' obligation to offer FRAND Terms and to abide by the Aggregate of Terms Provision.

49.     Plaintiffs demand through their Complaint in this action that their claimed damages be enhanced by "up to three times their amount," that they obtain pre-and post-judgment damages, costs, and expenses, and that they obtain "reasonable attorney fees" from Imation.

50.     No negotiation aimed at ascertaining a FRAND royalty rate could be negotiated under the *in terrorem* impact of such demands, even had Plaintiffs not breached their FRAND obligations prior to the institution of this action.

51.     Plaintiffs' demands for excessive royalties would have a significant impact not just on Imation's Blu-ray disc business, but also its DVD and CD business.

### CLAIMS FOR RELIEF

### First Cause Of Action
**(Breach of Contract)**

52.     Imation incorporates by reference the allegations of paragraphs 1-51.

53.     Plaintiffs entered into express or implied contractual commitments to comply with the BDA Bylaws when they became Members of BDA.

54.     Those contractual commitments are valid and in force.

55.     Parties such as Imation, who would implement or sell or potentially implement or sell any products complying with any Blu-ray Disc Format, were intended beneficiaries of Plaintiffs' contractual commitments under the BDA Bylaws.

56.     Plaintiffs were contractually committed to offer a license to any patents essential to any Blu-ray Disc Format on terms and conditions consistent with the requirements of the BDA Bylaws.

57.     Plaintiffs allege that at least five of the six patents at issue in this case are essential patents, and further allege that the sixth patent is a related patent.

58.     Plaintiffs breached their contractual commitments under the BDA Bylaws by failing to negotiate with Imation as to FRAND terms and conditions, and by filing this action after refusing to offer or negotiate for licenses for the patents-in-suit at fair, reasonable, and non-discriminatory rates.

59.     Plaintiffs breached their contractual commitments under the Aggregate of Terms Provision of the BDA Bylaws by refusing to license the Plaintiffs' Patents to Imation other than for rates that, when considered in the aggregate with all of the terms and conditions of all licenses under Essential Patents that BDA members have the authority to license, will block, frustrate, or harm acceptance of any Blu-ray Disc Format as a worldwide standard, and will block, frustrate, or harm development of products in any Blu-ray Disc Format, and will block, frustrate, or harm the commercialization of products in any Blu-ray Disc Format.

60.     Plaintiffs breached their contractual commitments under the BDA Bylaws individually and through the actions of their agent, Plaintiff One-Blue, LLC.

61.     As a result of Plaintiffs' breaches of their contractual commitments, Imation has been injured in its business or property, and has been threatened by imminent loss of customers, potential customers, and profits, along with damages from the cost of defending Plaintiffs' improperly filed action.

62.     Imation has suffered damage and irreparable harm, and will suffer further damage and irreparable harm, by reason of the acts, practices, breaches, and conduct of Plaintiffs until and unless the Court enjoins such acts, practices, and conduct.

**Second Cause Of Action
(Promissory Estoppel)**

63.     Imation incorporates by reference the allegations of paragraphs 1-62.

64.     Plaintiffs made a clear and definite promise to potential patent licensees, through their commitment to comply with the BDA Bylaws, that they would license any Essential Patents under FRAND Terms and in compliance with the Aggregate of Terms Provision of the BDA Bylaws.

65.     The intended purpose of Plaintiffs' promise was to induce reliance.

66.     Plaintiffs knew or should have reasonably expected that this promise would induce companies to market products complying with Blu-ray Disc Formats.

67.     Imation has purchased for re-sale and sold products complying with the Blu-ray Disc Format in reliance on Plaintiffs' promises, including ensuring that their products are compliant with Blu-ray technical standards and including Blu-ray disc technologies in Imation product offerings.

68.     Plaintiffs are estopped from reneging on their promises to potential patent licensees, including Imation, under the doctrine of promissory estoppel.

69.     As a result of Imation's reasonable reliance on Plaintiffs' promises, Imation has been injured in its business or property, and has been threatened by imminent loss of customers, potential customers, and profits, along with damages from the cost of defending this improperly filed action.

70.     Imation has suffered damage and irreparable harm, and will suffer further damage and irreparable harm, by reason of the acts, practices, breaches, and conduct of Plaintiffs until and unless the Court enjoins such acts, practices, and conduct.

### Third Cause Of Action
### (Waiver)

71.     Imation incorporates by reference the allegations of paragraphs 1-70.

72.     Either directly or through principals, Plaintiffs expressly stated, in their commitment to comply with the BDA Bylaws, that they would license any Essential Patents under FRAND Terms and in compliance with the Aggregate of Terms Provision of the BDA Bylaws.

73.     Through this statement, Plaintiffs voluntarily and intentionally waived any right to obtain compensation for licenses to the patents-in-suit other than through negotiations and at rates that comply with the relevant provisions of the BDA Bylaws or through further proceedings after Plaintiffs had, in good faith, engaged or sought to engage in such negotiations.

74.     Imation will suffer irreparable injury by reason of the acts and conduct of Plaintiffs until and unless the Court enjoins such acts and conduct.

75.     Imation will suffer irreparable injury by reason of the acts and conduct of Defendants alleged above until and unless the court enjoins such acts, practices, and conduct.

**Fourth Cause Of Action**
**(Declaratory Judgment That Plaintiffs' Offers Do Not Comply with Their Obligations)**

76.     Imation incorporates by reference the allegations of paragraphs 1-75.

77.     There is a dispute between the parties concerning whether Plaintiffs have offered to license the patents-in-suit consistent with Plaintiffs' contractual commitments under the BDA Bylaws.

78.     This dispute is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

79.     Imation is entitled to a declaratory judgment that that the obligation to license Essential Patents on fair, reasonable, and non-discriminatory terms is binding upon Plaintiffs; that Plaintiffs' breach of their obligation to offer licenses of standards-essential patents on fair, reasonable and non-discriminatory terms and conditions establishes a waiver of any right to seek damages, multiple damages, or attorney fees for alleged infringement of the patents-in-suit; and that Plaintiffs are not entitled to any damages, multiple damages, or attorney fees; or, alternatively, that Plaintiffs are entitled to no more than a fair, reasonable and non-discriminatory royalty rate.

## PRAYER FOR RELIEF

WHEREFORE, Imation requests that this Court enter a judgment and decree against Plaintiffs as follows:

A.     Dismissing Plaintiffs' Complaint with prejudice;

B.     Enjoining Plaintiffs from making further demands relating to standard-essential patents to Imation;

C.     Declaring that the obligation to license Essential Patents on fair, reasonable, and non-discriminatory terms is binding upon Plaintiffs.

D.      Declaring that Plaintiffs' breach of their obligation to offer licenses of standards-essential patents on fair, reasonable and non-discriminatory terms and conditions establishes a waiver of any right to seek an injunction or damages for alleged infringement of the patents-in-suit.

E.      Declaring that Plaintiffs are not entitled to any damages or, alternatively, that they are entitled to no more than a fair, reasonable and non-discriminatory royalty rate;

F.      Awarding Imation its costs and reasonable attorney fees; and

G.      Awarding Imation such further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Imation demands a jury trial on its affirmative defenses and counterclaims for all issues so triable.

[*Signature on following page.*]

Respectfully submitted,

DORSEY & WHITNEY (DELAWARE) LLP

Dated:  June 13, 2013

By  /s/ Robert W. Mallard
    Eric Lopez Schnabel (DE No. 3672)
    Robert W. Mallard (DE No. 4279)
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801
(302) 425-7171 (telephone)
(302) 425-7177 (facsimile)
E-mail: schnabel.eric@dorsey.com
    mallard.robert@dorsey.com

Peter M. Lancaster (MN ID #0159840)
Michael A. Lindsay (MN ID #0163466)
Kenneth E. Levitt (MN ID #0253674)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone:  (612) 340-2600
E-mail:  lancaster.peter@dorsey.com
    lindsay.michael@dorsey.com
    levitt.kenneth@dorsey.com

*Attorneys for Defendant Imation Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2013, I caused the foregoing ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS to be electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following, and served a copy of the foregoing document upon the following via First Class mail:

Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801

Frank A. Decosta, III
Joyce Craig
Mandy J. Song
Patrick J. Stafford
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001

*Attorneys for Plaintiffs*

　　　/s/ Robert W. Mallard　
　　　　Robert W. Mallard