1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

    ONE-BLUE, LLC, KONINKLUKE PHILIPS      :
4   N.V., PANASONIC CORPORATION, PIONEER   :    CIVIL ACTION
    CORPORATION, and SONY CORPORATION,     :
5                                          :
                 Plaintiffs,               :
6   v                                      :
                                           :
7   IMATION CORPORATION,                   :
                                           :    NO. 13-917 (LPS)
8            Defendant.                     
                               - - -

9
                          Wilmington, Delaware
10                        Friday, November 8, 2013
                          *Telephone Conference*

11                             - - -

12
    BEFORE:          HONORABLE **LEONARD P. STARK**, U.S.D.C.J.

13
    APPEARANCES:                 - - -

14

15          SHAW KELLER, LLP, P.A.
            BY:  KAREN E. KELLER, ESQ.

16
                 and

17
            FINNEGAN HENDERSON FARABOW GARRETT & DUNNER
18          BY:  FRANK A. DeCOSTA, III, ESQ., and
                 JOYCE CRAIG, ESQ.
19               (Washington, District of Texas)

20                    Counsel for Plaintiffs

21
            DORSEY & WHITNEY, LLP
22          BY:  ROBERT W. MALLARD, ESQ.

23               and

24

25                              Brian P. Gaffigan
                                Registered Merit Reporter

1    APPEARANCES:  (Continued)

2
                  DORSEY & WHITNEY, LLP
3                 BY:  PETER M. LANCASTER, ESQ., and
                       KENNETH E. LEVITT, ESQ.
4                      (Minneapolis, Minnesota)

5                       Counsel for Defendant

6

7                          - oOo -

8                  P R O C E E D I N G S

9            (REPORTER'S NOTE:  The following telephone

10   conference was held in chambers, beginning at 11:32 a.m.)

11           THE COURT:  Good morning, everybody.  This is

12   Judge Stark.  Who is there, please?

13           MS. KELLER:  Good morning, Your Honor.  Karen

14   Keller from Shaw Keller on behalf of plaintiff, One-Blue.

15   Also with me today are Frank DeCosta and Joyce Craig from

16   Finnegan Henderson as well as Jack Slobod who is General

17   Counsel for One-Blue.

18           THE COURT:  Okay.  Thank you.

19           MR. MALLARD:  Good morning, Your Honor.  This is

20   Robert Mallard of Dorsey & Whitney for the defendant Imation

21   Corporation.  We also have Peter Lancaster from Dorsey &

22   Whitney on the line.

23           THE COURT:  Okay.

24           MR. LEVITT:  And Ken Levitt from Dorsey is on

25   the line as well.

1          MR. MALLARD:  I apologize, Ken.  And Ken Levitt.

2          MR. LEVITT:  No problem.

3          THE COURT:  I have my court reporter here with

4    me.  And for the record, it is our case of One-Blue LLC, et

5    al versus Imation Corporation, Civil Action No. 13-917-LPS.

6    And this is the time I set for us to discuss your disputes

7    related to scheduling.

8          I've reviewed the letter submitted under

9    Ms. Keller's name.  I think I understand what the couple of

10   disputes are but I wanted to hear further from both sides on

11   those disputes.  So let me hear first from the plaintiff.

12          MR. DeCOSTA:  Your Honor, this is Frank DeCosta

13   from Finnegan speaking for plaintiffs.

14          As we see it, there are two disputes:

15          The first is whether or not to the exclusion of

16   everything else, the Court and the parties should focus on

17   discovery related to a FRAND royalty rate; in other words,

18   setting a royalty rate that would be appropriate for the

19   patents, if they are found to be valid, enforceable and

20   infringed.  So accelerating discovery on that issue to the

21   exclusion of others.  And,

22          The second issue is the discovery limit for

23   depositions.

24          So as to the first issue, Your Honor, I think

25   we laid it out fairly concisely in our paper.  But we see

1     this really as defendants' request to bifurcate the case

2     effectively.  Primarily, if you look at the tests that are

3     required, I think if you look at Imation's position, they're

4     looking at the issue of conservation of resources, haven't

5     laid out their burden for prejudice or eliminating jury

6     confusion.  They haven't asked for a trial, a separate trial.

7           But on the issue of prejudice, if you compress

8     what they're seeking to compress, the issues of dealing with

9     FRAND and excluding all other issues, compressing that

10    discovery into an early phase and leaving everything else

11    to the end would create prejudice for us in having to do

12    everything at the end and potentially asking for more time

13    and moving the trial date.

14          The second, on the issue of conservation of

15    judicial resources, we don't see that there would be any

16    because there is substantial overlap in the inquiry that

17    would be necessary to look at the FRAND issues and the

18    issues relating to validity and infringement, for example.

19    And I can get into detail, if Your Honor would prefer, on

20    those issues.

21          So just looking at that issue separately, we

22    don't see there is any basis for defendants to meet their

23    burden.  In fact, if you look at their request, it seems

24    that defendants are saying that this isn't necessarily

25    going to resolve or dispose of the issues.  I think their

1    contention is that somehow the Court may set a royalty rate

2    that would lead to settlement and ending the case, but on

3    summary judgment, our question is how the appropriate rate

4    for the patents that are asserted would be an issue that

5    would be appropriate for summary judgment and then, separately,

6    the issue of focusing discovery on determining that royalty

7    rate would not have clear boundaries and would have

8    substantial overlap with the other issues.

9              So I'll stop there.  That's really our view on

10   that one issue.  If the Court has questions, we can respond.

11             THE COURT:  Yes.  Let me ask you some questions.

12             First, they say in the letter that perhaps to

13   distinguish this case from others that here we know what

14   the patents are and we know that the patents are allegedly

15   standard, essential.  The suggestion is, and I guess the

16   fundamental question becomes, why not do this?  You may be

17   right that there is potential prejudice to you, although

18   there are ways we can probably deal with that.  It may not

19   be case dispositive, but why not figure out what this case

20   is worth and make that everybody's priority up front and

21   see what happens?

22             MR. DeCOSTA:  Fair question, Your Honor.  First

23   of all, in order to determine what the case is worth -- and

24   I think a good framework is the case that defendants have

25   looked at, either the *Microsoft* case or the *Innovatio* case.

1   If you look at the analysis that is required, as you said,

2   to figure out what the case is worth, we don't see that

3   there is a separation between that exercise and what would

4   be the same exercise for determining whether the patents are

5   valid and infringed.

6           Let me give you some specifics.  In order to

7   figure out what the case is worth, you look at the patents.

8   And the *Microsoft* case, for example, said you look at the

9   relationship of the patents to the standard that the patents

10  are claimed to be essential to.

11          Well, in order to do that, you need to have a

12  sense of what the claim scope is, you need to have testimony

13  from people regarding the technology, people familiar with

14  the standard.

15          To determine what the relationship of -- the

16  next step would be, to determine what the relationship of

17  the patent to the accused technology would be requires an

18  inquiry into again the scope of the claims.  It would require

19  testimony of experts.  It would require fact witness testimony.

20          And then the last of the three prongs of the

21  *Microsoft* analysis is, looking at what you did for 1 and 2,

22  so looking at how you compare the patents to the standard

23  and how you compare the patents to the products, let's look

24  at comparables.  Let's look at what other royalty rates are

25  being charged by other similar programs.  So it's like a

1      market analysis of property.

2             So if you look at the witnesses that you would

3      line up, if you look at the discovery, the written discovery,

4      if you look at the document production, if you look at all the

5      discovery that would be needed to determine as you said what

6      the patents are worth, we don't see there being a meaningful

7      boundary between that discovery and discovery to determine

8      whether the patents are valid, enforceable and infringed.

9             If the defendants are suggesting they are willing

10     to stipulate that the patents are valid, enforceable and

11     infringed, then let's just move to the issue of damages.  That

12     would be another consideration for us, and we would consider

13     that proposal.

14            THE COURT:  What if they're willing to stipulate

15     to all of that just for purposes of determining a royalty rate?

16            MR. DeCOSTA:  It still doesn't get us to having to

17     prove that the patents are valid, enforceable and infringed if

18     we ultimately have to do that.  So it's fine to take that as a

19     premise for staging discovery, but if you don't settle the

20     case, you still have to go through the second phase.  You are

21     redoing the discovery that I just outlined.

22            THE COURT:  All right.  Address the deposition

23     hours dispute.

24            MR. DeCOSTA:  We believe that 100 would be

25     sufficient.  I think the primary dispute is that defendants

1    think that there should be a different number, that they

2    should have more hours than we should have because we have

3    more people on our side than they have.  And we don't think

4    that is the end of the inquiry.  We probably have just as many

5    issues to discover as they do through deposition testimony.

6    It's not just Imation but it's their suppliers, it's also

7    their customers.  So there could potentially be an equal

8    number of issues for us to conduct deposition discovery for,

9    so we don't think there should be a different number.  And,

10            As to the absolute number, we thought 100 would

11    be sufficient to apply some kind of restraint on the parties

12    so this doesn't go unlimited.

13            THE COURT:  All right.  Thank you.  Let me hear

14    from the defendants, please.

15            MR. LANCASTER:  Your Honor, this is Peter

16    Lancaster.

17            There may have been one issue as to which we

18    misunderstood the plaintiff's concerns when we were working

19    out the scheduling order.  Of course, we were trying to agree

20    on as much as we could agree on.  And that is the issue of

21    compressing the time devoted to the FRAND, the reasonable

22    royalty determination.  We had thought that leaving the end

23    date for all discovery would be a goal of the plaintiff, and

24    that's what resulted in what I'm now understanding is regarded

25    as a compression of the reasonable royalty phase of the case.

1    That was not our intent.  And if the plaintiff thought that

2    there was too little time devoted to that issue, we have no

3    objection at all to expanding it.  Our goal is merely the

4    ordering issue that we focused on.

5            With respect to that ordering issue, I think I

6    can highlight our concern with a few numbers.  The website

7    of One-Blue, one of the plaintiffs, lists a total in two

8    basic categories of over 200 patents.  And in saying that,

9    I may well be guilty of some double counting because it's

10   two different product lists, and I haven't made an effort

11   in giving you that number to eliminate the double counting

12   aspect.  Each of those patents has multiple claims.

13           Assuming that the plaintiffs are right that

14   those are standard essential patents, if one claim of any

15   one of those however many hundred patents there are is valid

16   and infringed, Imation cannot sell Blu-Ray discs.  That's

17   why an extended debate over validity, infringement over the

18   half dozen patents that are at issue in this case is not a

19   useful way for either side to spend resources.

20           If, on the other hand, we determine what a

21   reasonable royalty rate is, at that point Imation knows one

22   of two things.  It knows, one, that the rate that is set is

23   a rate that it can afford to pay, and it is a rate that can

24   easily be extrapolated to all the other patents because

25   that is typically how courts have analyzed it.  It's the

1   pool that has to generate a reasonable rate.  If, on the

2   other hand, the decision is a rate that Imation cannot

3   economically stay in the market for, they're done in that

4   event as well.

5            That's why it seemed to us that the very

6   expensive process of analyzing, one by one, claim by claim,

7   the first half dozen of what could ultimately be some 100 or

8   200 exercises did not seem to us to be a good way for the

9   parties, or the Court for that matter, to spend its time.

10  The two cases --

11           THE COURT:  Let me interrupt you.  I'm not sure

12  I understand your position.  When you say they're done, your

13  client that is, in either event, are you suggesting that

14  you're prepared to stipulate to infringement and validity?

15  That is, there will be no subsequent litigation after we

16  determine the FRAND?

17           MR. LANCASTER:  At this point, we don't know

18  the answer to validity and infringement.  And I'm sure you

19  appreciate a lawyer's natural reluctance to stipulate to

20  facts they don't know.  But what I'm saying is that it is

21  hard for me to imagine in either one of those events

22  economically how it would make sense for Imation to litigate

23  validity and infringement issues because in the bimodal set

24  of decisions I have hypothesized, in either event it

25  wouldn't make sense for Imation likely to do that.

1          THE COURT:  I understand your reluctance and

2    your client's reluctance, and that is fine.  But I'm trying

3    to understand, as I think about what would be most likely to

4    promote efficiency and economy, what you're offering I think

5    is let's accelerate everything that you think is your best

6    case for winning.  You know, we would see whether you get a

7    royalty rate you are happy with or not, but if you are not,

8    there is nothing to protect the plaintiff or the Court from

9    having this full scale invalidity and infringement dispute

10   with six patents which may be the first six of 200.  So I

11   guess the question ultimately becomes what are you really

12   offering in terms of chances of judicial economy?

13          MR. LANCASTER:  I think that what I am offering,

14   Your Honor, is very high probabilities rather than granted,

15   not certainty, just because, as I say -- and the Court is

16   right in the sense that obviously this is an issue that we

17   think favors us.

18          I don't think that it's any secret that our view

19   is that a case like this, where we think that as far as we

20   understand no party has ever accepted a license on the terms

21   that were offered by the plaintiffs unless they were getting

22   a grant back in connection with it, and if, as our client

23   believes, the proposed rate is a rate that would put it out

24   of business, we do think if that is not a violation of a

25   FRAND obligation, there never could be.  And so the Court

1 is right that we regard that as a favorable issue, but it

2 does seem to us to promote efficiency for all concerned for

3 the reasons that I stated.

4    It's just hard to imagine the company either with

5 an acceptable royalty rate or a rate that would put it out

6 of business, the two extremes, deciding that it's worthwhile

7 litigating validity and infringement on six patents.

8    THE COURT:  Okay.  Feel free to add anything

9 else you like, Mr. Lancaster.

10    MR. LANCASTER:  Let me just speak to the

11 deposition issue.  I'm sure the Court has encountered this

12 issue before that when there is a number of parties on one

13 side of the V and only one on the other, and we're not

14 attached to what the resolution of that problem is.  We

15 proposed one resolution.  Obviously, if we were to go crazy

16 with serving deposition notices, that has to be controlled.

17    But I have seen other courts deal with the

18 problem by setting different numbers for the two parties.

19 But the basic problem of you obviously always want to know

20 what the other party's position is so that, off the bat,

21 we're at a 5-to-1 disadvantage in terms of number of

22 depositions doesn't seem appropriate to us.

23    To compound that problem a little bit, there is

24 another party that is very important to this exercise:  the

25 Blu-Ray Disc industry, an industry group that was involved

1    in setting these standards.  I understand, and I'm passing

2    along hearsay, but I understand -- Mr. Slobod I'm sure knows

3    the answer to this -- I understand the head of One-Blue is

4    also the head of BDA at this point, so the principal

5    third-party is also effectively aligned with the plaintiffs.

6    So just in terms of the difficulty of taking discovery from

7    multiple parties versus being able to focus on one, some

8    distinction seemed appropriate to us.

9              THE COURT:  All right.  Going back, Mr. Lancaster,

10   to the tougher issue on the FRAND question.  Is your client --

11   I take it the answer has to be "yes," but is your client

12   willing to stipulate just for purposes of determining what the

13   reasonable royalty rate would be, stipulate that the patents

14   are infringed, are valid, are standard, essential, anything

15   else we would need to have you stipulate to, without prejudice

16   to your ability to litigate later, in order to hope to stream-

17   line and have economy?

18             MR. LANCASTER:  Yes, I believe the answer to

19   that is yes.  And as the Court is likely aware, one standard

20   assumption for a Georgia-Pacific analysis is a set of

21   assumptions like that.

22             THE COURT:  Is there anything else, Mr. Lancaster?

23             MR. LANCASTER:  That's all from me, yes.  Thank

24   you.

25             THE COURT:  Mr. DeCosta, you can respond.

1           MR. DeCOSTA:  Thank you.  Yes.

2           I think the primary point we would like to get

3      across, Your Honor, is telling by defendants' reference to

4      trying to avoid a full blown litigation of validity and

5      infringement issues.  What we're trying to impress upon the

6      Court is that if you look at the analysis, and I think, if

7      you haven't already, the *Microsoft* and *Innovatio* decisions

8      are good illustrations that there really isn't much daylight

9      between what I think defendants are contemplating as a full

10     blown validity and infringement analysis from the FRAND

11     analysis.  It requires substantially the same inquiry.  I

12     won't repeat what I said before, but you have to look at the

13     scope of the claims, the accused products.  You have to look

14     at the standard in as much detail as if you are proving your

15     infringement positions and defending your validity positions.

16          So we don't think there is a savings either to

17     the Court or to the parties by defining this artificially

18     and saying we're going forward with FRAND discovery only.

19     I, quite frankly, can't really tell you and maybe defense

20     counsel can offer what we do in FRAND discovery that we

21     would not do in "full blown" discovery.  And then I am

22     wondering what disputes we would have before the Court to

23     try to enforce what that boundary is.  And if you look at

24     the two cases that we have that provide us guidance, they

25     are fairly substantial discovery on those issues, so I don't

1    know what the savings would be.  So that is point one."

2              The second point is I don't know how we can ask

3    this Court in summary judgment fashion to determine what the

4    appropriate royalty rate would be.  Counsel has mentioned

5    allegations of violating FRAND, violating agreements, but

6    that is not what they're asking for.  They're asking for a

7    determination of a rate.  So they're asking the Court to

8    tell us what the number is that is a reasonable royalty rate

9    for the patents.  I can't see how there are not going to be

10   any factual disputes at the end of whatever discovery we do

11   that the Court can make that kind of determination.

12             So that is our dilemma, Your Honor.  We just

13   don't see a path through that would be helpful to the Court or

14   to the parties in saving money and avoiding really anything.

15             THE COURT:  All right.  Let me come back to

16   Mr. Lancaster.

17             Address first off, I think Mr. DeCosta is

18   correct in that we've been talking about a couple different

19   things.  You have a defense, you want to assert of breach of

20   contract, but what you are asking the Court to do is impose

21   a schedule that would lead to an answer as to what is the

22   rate that would be fair and reasonable.  Isn't there some

23   sort of non sequitur there?

24             MR. LANCASTER:  There may well be, but that

25   is not what we would be asking for in summary judgment.

1    What we would be requesting in summary judgment is a flat

2    determination that the FRAND obligation has been breached.

3    That an owner of standard, essential patents is not entitled

4    to say here is the rate.  We don't care if it will put you

5    out of business.  We're not going to justify the rate.

6    We're not going to explain to you what the basis is.  We

7    don't care that nobody else has ever agreed to it.  Accept

8    it or litigate 200 patents.

9              Our presentation to the Court would be as a

10   matter of summary judgment, that is not appropriate.  We can

11   win or lose that issue obviously, Your Honor, but that would

12   be our summary judgment request.

13             If we failed on that, then counsel is right that

14   we would be looking at what a reasonable royalty rate would

15   be, assuming that we don't agree on that through the course

16   of exchanging information.

17             I don't think -- and I appreciate these can be

18   "famous last words."  I don't think that the very complicated

19   analysis that was undertaken in the two cases that have been

20   published so far would be replicated here.  And I think

21   that partly because the issues at stake are not nearly as

22   substantial here as they were there.  They're a very important

23   product to the company, and I'm sure it's very important to

24   One-Blue and the plaintiffs, too, but not I think on the scale

25   of those cases.  And,

1             Second, we have asked in initial discovery,

2    could you tell us whether you think that patents at issue

3    here vary in importance from any of the other 100 or 200

4    other patents?  And I think it's unlikely that there will

5    be much litigation over that partly because I understand

6    that One-Blue has already made a determination of relative

7    importance of patents in a setting that we don't really have

8    much reason to question at this point.  My expectation is

9    that we will be accepting those internal assertions of

10   relative value, granted it a dangerous thing for me to say

11   given I have not seen them yet.

12             THE COURT:  So let me try to understand.  What

13   your proposal, Mr. Lancaster, would be essentially you

14   could move for summary judgment you think with almost no

15   discovery, it sounds like, on whether One-Blue has already

16   breached its FRAND obligations; and in the event that you

17   do not prevail on that, then you would want discovery to be

18   phased and focused just on determining a reasonable royalty

19   rate 'and it's only if we get past all that and the case

20   isn't resolved one way or another, then you would say the door

21   then has to be open to full blown discovery and litigation

22   related to validity and infringement.  Is that essentially

23   what I should understand is the defendant's proposal?

24             MR. LANCASTER:  Not exactly, Your Honor.  We're

25   not thinking about three phases, we're thinking about two

1    phases.  And you are right, Your Honor, that we do not feel

2    we need very much discovery or the plaintiffs need very much

3    discovery for the summary judgment motion.  A little bit,

4    but we're not asking that other reasonable royalty related

5    discovery be stayed while that happens.  We're assuming that

6    it would just be part of it.

7                    THE COURT:  All right.

8                    MR. LANCASTER:  So we are talking about two

9    issues, not three issues, even though as is common in lots

10   of cases, a summary judgment motion would be focused on just

11   a subset of the discovery taken at a particular point.

12                   THE COURT:  Okay.  Thank you.  Mr. DeCosta, you

13   can have the last word.

14                   MR. DeCOSTA:  Thank you, Your Honor.  I guess

15   the difficulty that I'm having, Your Honor, is I'm really

16   focused on the specifics of if the Court granted defendants

17   what they're asking for, how would the mechanics of discovery

18   be different if we focused on FRAND issues?

19                   Now, I hear defense counsel saying that they're

20   asking for something different than the determination of a

21   rate, but ultimately it sounds like their theory of whether

22   or not plaintiffs have breached any obligation they have

23   turns on whether the rate they want to pay, the rate offered

24   is different or appropriate in view of the rate they want to

25   pay.

1          That sounds like inherently a factually

2     intensive issue, and it sounds like it requires exactly an

3     analysis that the other courts have gone through on this

4     issue, and that analysis required all the discovery that I

5     talked about before.  I don't see that there is a difference

6     in what we would do going forward with discovery.

7          You know, I can go through a series of 20

8     questions with counsel and say:  Would we have expert

9     testimony?  Would we have the inventors being deposed?

10    Would we need claim construction?  Would we actually talk

11    to the percipient witnesses that developed the standard to

12    understand what it was intended to cover and what

13    representations were made?

14         So I would go through a long list of discovery

15    that I think would be necessary to get to where defense

16    counsel wants to go.  I'm not clear how we could avoid -- how

17    that is different than what we would do for our infringement

18    and validity analysis.

19         On the validity side, if you look at what

20    *Microsoft* did, they actually looked at alternatives.  They

21    looked at alternatives involved in the prior art compared to

22    the patented technology to determine the value of it.  So

23    that is inherently related to validity.

24         So I'm sorry to take us down to the details,

25    Your Honor, but I think that is what this proposal is about.

1  It's about whether or not, when you get into implementing

2  what defense counsel is asking for, do you save any time for

3  the parties or the Court?  And I don't see how you would,

4  and I don't see how you would set that boundary.  And,

5          Again, focusing on the number and some of the

6  representations that counsel has made, I appreciate he is

7  offer probabilities and possibilities, but in order for this

8  to work, we really need to have assurances that we don't

9  have to redo or overlap in some of the activities.  So that

10  is why I go back to willing to stipulate that the patents

11  are valid, enforceable and infringed.  Then we can move to

12  where we should focus on, what is the appropriate number.

13          THE COURT:  Okay.  Thank you.  Well, I agree

14  that I need more specifics.  I understand Mr. DeCosta's

15  argument and how he thinks we need to get more down into the

16  details to understand whether or not there is a probability,

17  a sufficient probability of saving costs and saving time and

18  saving judicial resources by adopting something along the

19  lines of what the defendant has proposed.  Basically, I

20  can't tell from what you all have argued and provided to

21  me at this point, and so I am going to give you a little

22  bit more time to make a very specific, concrete proposal.

23          That is, what I want, what I'm ordering is that

24  you each submit to me, I'm going to say a week from today,

25  your roadmap for what discovery would look like if I were

1    to adopt what it is the defendants want me to do.  And as

2    I understand it, what the defendant wants is basically a

3    phased process wherein the first portion of discovery, the

4    first portion of the case, discovery and motions practice

5    would be limited to anything relating to the breach of

6    contract defense as well as determining what an appropriate

7    royalty rate would be.

8         Let me see specifically what it is the defendant

9    would ask for in discovery, and let me see what it is, as

10   best as plaintiffs can discern, the full blown discovery

11   they think would be needed.  And once I hopefully have a

12   better understanding as to the divide there as to what you are

13   both envisioning would happen if I adopted the defendants'

14   proposal, I will certainly be in a better position to

15   determine whether or not to go with defendants' proposal.

16        All of this I should say I think is a necessary

17   and helpful exercise in a case like this.  I am not persuaded

18   at the moment by plaintiff that this case is just like every

19   other patent case and that I should not be concerned by the

20   issues raised by the defendants and just let full blown

21   discovery on everything relating to these patents occur right

22   from the get-go in the context in which this case arises.  I'm

23   also, however, not persuaded by defendants that what they

24   propose and what they will not agree to forego down the road,

25   I'm not persuaded yet that they really are offering anything

1    that is likely enough to lead to efficiencies for the parties

2    or for the Court.  So that's why I think it will be helpful

3    for you all to be more concrete, more specific as to what

4    discovery you think would be necessary if I were to adopt the

5    defendants' proposal.

6              So that is the tough issue that I can't resolve

7    today, and I'm asking for and ordering further submissions

8    from each side related to those issues by a week from today.

9              MR. DeCOSTA:  Your Honor?

10             THE COURT:  Hold on.  I will give you a chance

11   to talk.  Don't worry.

12             MR. DeCOSTA:  Thank you.

13             THE COURT:  I would envision that there will be

14   some preliminary exchange and some meeting and conferring

15   over the course of that week, but I will be looking for

16   separate submissions a week from today.

17             On the easier issue, the deposition dispute,

18   there I'm going to rely, when I ultimately enter a schedule

19   here, I'm going to rely on my general practice there and

20   give an equal number of deposition hours to both sides and

21   remind you both, just because I have given you that number

22   of hours, it doesn't mean that that's a license to abuse.

23   You don't use all those hours if you don't need them.  And

24   it also don't mean that I'm necessarily right at the

25   beginning of the case as to how many hours you will need.

1    If it turns out you need more or only one side needs more,

2    then you meet and confer, and if you can't work that out,

3    you come back to me and I will resolve it at that time based

4    on the facts of the case.

5           That's the easy issue.  I don't think that one

6    will be a big concern for anyone going forward.  But let me

7    now see if you have any questions about what I have ordered.

8           First, Mr. DeCosta.

9           MR. DeCOSTA:  Thank you, Your Honor.  One question.

10          It may be helpful for us, Your Honor, if we

11   could respond to the proposal submitted by defendants.  I've

12   been thinking it for this reason.  They submitted what they

13   thought would be what their specific proposal was, because

14   it seems to have changed a little bit.  We can annotate

15   whatever they proposed in our response to the Court with the

16   specific discovery we think would be necessary to implement

17   their plan and show how it overlaps with the "full blown"

18   discovery.  So I think that might be more helpful to the

19   Court to have that rather than have us submit simultaneous

20   proposals and maybe talking past each other or not quite

21   addressing what their proposal is.

22          THE COURT:  Yes, I think that is an excellent

23   suggestion.  What I want to end up at the end of the day is

24   essentially both parties' discovery plans based on your

25   common understanding as to what the defendants are proposing

```
1    overall.  And maybe the best way to do that is to have the

2    defendants submit something first, and then for you to

3    follow-up, and then maybe for the defendants to respond.

4    I'm open to that.

5              And I'm open to the timing, too.  One week with

6    the holiday in between may be too aggressive.  Mr. DeCosta,

7    do you have a view on that?

8              MR. DeCOSTA:  No, we can meet the schedule.  I

9    think if they submit something in a week, we can respond in

10   a week.

11             THE COURT:  Okay.  Mr. Lancaster, what do you

12   think?

13             MR. LANCASTER:  I think we can live with that,

14   too, Your Honor.  We would appreciate having the opportunity

15   even if we didn't take it to respond to the defendants'

16   comments.

17             THE COURT:  All right.  Well, let me amend

18   what I said before.  I'm ordering the defendants to make a

19   submission consistent with what we've discussed here today

20   by a week from today, give the plaintiff until a week from

21   then to respond, and then the defendants can have until the

22   following Tuesday to file a reply.

23             Obviously, I think it's important that you do

24   talk to one another over the course of these couple weeks.

25   Anything that you all can agree on and focus and narrow the
```

1   dispute, as you did frankly before coming in today, I

2   recognize you did a lot of work and narrowed things for me

3   today and that was helpful, but any further narrowing you

4   can do so that you are not wasting time and pages on things

5   that really I don't have to try to figure out will certainly

6   be much appreciated.

7           Are there any further questions, Mr. DeCosta?

8           MR. DeCOSTA:  No, Your Honor.  Thank you.

9           THE COURT:  And Mr. Lancaster.

10          MR. LEVITT:  Your Honor?

11          MR. LANCASTER:  I'm sorry.  One very detailed

12   one, Your Honor.  So what would be most helpful to the

13   Court, I'm gathering, would be an actual schedule with

14   issues maybe with a cover letter explaining it?  That would

15   be most helpful?

16          THE COURT:  I'm not going to limit you to that

17   format, but that sounds as an initial matter like it would

18   be helpful.  Basically, they're saying I need to do claim

19   construction and basically full blown discovery if I accept

20   what you proposed.  You say that is not the case but you

21   need some discovery.  So I need to know what exact discovery

22   do you think is necessary and then presumably the plaintiffs

23   are going to explain to me why that is not sufficient, so

24   however you can convey that to me will be very helpful.

25          MR. LANCASTER:  That sounds good.

1          MR. LEVITT:  Your Honor, this is Robert Mallard.

2     A practical question.  Do you have a page limit in mind for

3     the submissions?

4          THE COURT:  I'm not going to put a limit on it.

5     I assume that you will be able to keep it to a reasonable

6     amount, but I'll leave it to you to figure that out.

7          MR. MALLARD:  Thank you.

8          THE COURT:  Anybody, anything else?

9          MR. LANCASTER:  Not from defendant.

10         MR. DeCOSTA:  Nor from plaintiffs.

11         THE COURT:  Okay.  Thank you very much.  We'll

12    look for your submissions starting next week.  Good-bye.

13         (Telephone conference ends at 12:08 p.m.)

14

15         I hereby certify the foregoing is a true and accurate
      transcript from my stenographic notes in the proceeding.

16

17                              /s/ Brian P. Gaffigan
                               Official Court Reporter
18                             U.S. District Court

19

20

21

22

23

24

25